Max Bloom, J.
This is a proceeding by the District Attorney of Bronx County to compel the respondent to participate in a lineup. The facts giving rise to the application are not controverted, although respondent has submitted a memorandum in opposition to the application.
Complainants are two 15-year-old girls. In the early morning of January 15, 1975, they were standing in a bus stop at the corner of Grand Concourse and Fordham Road, apparently awaiting a bus to return them to the Lt. Joseph P. Kennedy Home, where they resided. While they were waiting, a car pulled up and the sole occupant thereof, a male, offered them a ride. The girls accepted. During the ride the male informed them that he was a member of the "Hitching Squad” and showed them what appeared to be an official police badge.
The male parked the car in the vicinity of Wickham and Astor Avenues, ordered the girls into the rear seat of the car and there engaged in acts which, it is alleged, constitute sexual abuse and endangering the welfare of a child.
Complaint was thereafter made to the police. A description of the alleged offender was given, as was the registration *207 number of the car. The complainants further indicated that the initial number of the police shield shown to them was 3. Investigation showed that the car registration belonged to respondent and that his police shield number is 31617. As to the car itself, there was some slight variation in the description given. The girls stated that it was a blue sedan. In fact the car was a green Oldsmobile. The physical description given by the girls tallies with that of respondent with one notable exception. The girls insisted that the alleged offender wore both a moustache and goatee. The respondent has a moustache, but no goatee. Indeed, an attempted photographic identification proved fruitless because the photograph showed respondent to be clean-shaven.
We may start with the premise that the limitation here sought upon respondent’s freedom of action, although less than an arrest, constitutes a seizure of his person at least for the duration of the identification proceeding (cf. Cupp v Murphy, 412 US 291; People v Morales, 22 NY2d 55;[1] People v Peters, 18 NY2d 238;[2] People v Rivera, 14 NY2d 441, cert den sub nom Rivera v New York, 379 US 978).
It is plain that the command of the Fourth Amendment is as applicable to the investigatory stage as it is to the prosecutorial stage. "Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests’ or 'investigatory detentions’ ” (Davis v Mississippi, 394 US 721, 726-727). Davis involved a conviction of a 14-year-old for rape. In the endeavor to identify the *208 culprit, the police conducted a wholesale interrogation of some 65 to 75 youths. In the process approximately 25 were fingerprinted in order to compare their fingerprints with latent prints taken from the «window of the victim’s house. The defendant was twice fingerprinted and, after confirmation from the FBI that one set of his prints corresponded to the latent prints used as the basis for comparison, he was indicted, tried and convicted. While the dragnet procedure employed mandated a reversal because defendant’s Fourth Amendment rights had been violated, the court was careful to point out (p 727) that "[i]t is arguable, however, that, because of the unique nature of the fingerprinting process, such detentions might, under narrowly defined circumstances, be found to comply with the Fourth Amendment even though there is no probable cause in the traditional sense. See Camara v Municipal Court, 387 US 523 (1967). Detention for fingerprinting may constitute a much less serious intrusion upon personal security than other types of police searches and detentions. Fingerprinting involves none of the probing into an individual’s private life and thoughts that marks an interrogation or search.” In Davis the conflict with the Fourth Amendment arose by reason of the failure of the police to abide by "the general requirement that the authorization of a judicial officer be obtained in advance of detention”. (Davis v Mississippi, supra, p 728).
Cupp v Murphy (supra) posed another side of the same medal and expanded upon the doctrine of permissible seizure of the person. There the respondent had been convicted of the murder of his wife and sought relief by way of habeas writ. The facts showed that the victim had been strangled. Respondent, who was not then living with his wife, received word of the killing and reported it to the police at once and voluntarily came in for questioning. While at the station house with his attorney the police noted a dark spot on his finger. Suspecting that the spot might be blood, the police requested, and were denied, permission to take a sample of scrapings from his fingernails. Under protest and without warrant the police proceeded to take such scrapings. These showed traces of skin, blood cells and fabric from the victim’s nightgown. Arrest did not take place until approximately a month later.
The court recognized that the detention for the purpose of taking scrapings without respondent’s concurrence constituted a seizure of his person. However, basing its conclusion on the *209 finding by the lower courts that probable cause for an arrest existed at the time the samples were taken, the Supreme Court held the seizure of the person proper.
There are two New York cases, both decided at nisi prius, which deal with the subject matter here involved, and which, it is claimed, warrant a denial of the application. In Matter of Mackell v Palermo (59 Mise 2d 760), the respondent had previously been convicted in Richmond County of robbery in the first degree. While housed in the Tombs, apparently awaiting transfer to State’s prison, the claim was put forth that he had been involved in another robbery in Queens. It was asserted that the perpetrators of the Queens robbery had been clean-shaven. Inasmuch as respondent had grown a beard while in jail which, it was contended, would make identification difficult, the application requested that he be placed in a lineup to be held at the place of his detention and that his beard be shaved under the direction of the warden for his appearance in the lineup. After an extensive discussion of the authorities the court denied the application pointing out (p 765) that the respondent was "merely a suspect against whom the District Attorney has thus far established no probable cause warranting an arrest.”
In Matter of Goldstein (NYU, Jan. 20, 1975, p 18, col 3), application was made to have the respondent, who was thought to have participated in an assault, stand in a lineup. The respondent had previously participated in a lineup in connection with the same matter but the complainant had been unable to identify him. At the time of the application two additional witnesses had been discovered and a second lineup was sought so that the question of identification could be resolved. Basing its holding on Matter of Mackell v Palermo (supra), and Davis v Mississippi (supra), the court concluded that it was without power to direct the holding of the lineup.
It is particularly worthy of note that neither in Mackell nor in Goldstein is there any indication of the facts which, allegedly, connected the respondent with the crime charged.
In Wise v Murphy (275 At 2d 205 [DC]), the charge was rape at knife point. The only information as to identity furnished to the court indicated that photographs had been shown to the complainant and she selected respondent’s picture as revealing (p 217) "facial features * * * similar to those of the man who assaulted her.” The court held (p 217) that "[u]nder the *210 limited facts presented the proposed lineup 'would invite intrusion upon constitutionally guaranteed rights based on nothing more substantial than [possible] inarticulate hunches * * * ' [citation omitted]. We think it necessary for the police to specify how they arrived at their conclusion that the individuals in the group of photographs were possible suspects.” Accordingly, the case was remanded for further proof. However, the court was careful to note its conclusion "that court-ordered lineups predicated on reasonable grounds short of a basis for formal arrest can be squared with the Fourth Amendment — the test being whether the particular intrusion is reasonable when based on all the known facts and legitimate law enforcement interests.” (p 208). (For a discussion of the applicability of the balancing test in relation to Fourth Amendment questions, see Camara v Municipal Court, 387 US 523; See v City of Seattle, 387 US 541; Note, 18 Wayne Law Review 827.)
Here, in contradistinction to Mackell v Palermo (supra), and Matter of Goldstein (supra), the facts presented make plain that there is reasonable cause to believe that a crime has been committed and, at the very least, a substantial basis, if not reasonable cause, to believe that the respondent defendant was involved in its commission. Whether, in light of Cupp v Murphy (supra), there is need for the order sought is subject to speculation. Petitioner, however, in order to obviate any question regarding his right to conduct the lineup, has followed the better procedure and has carefully tailored his application to meet the requirements of Davis v Mississippi (supra) and Wise v Murphy (supra). Given the circumstances involved, the tender years of the complainants and the obligation of the respondent to the public by virtue of his position, the importance of the resolution of the question of identity is obvious. It may not be left without resolution.
It is plain that the Fifth Amendment presents no obstacle to the granting of the application (United States v Wade, 388 US 218; Schmerber v California, 384 US 757; Holt v United States, 218 US 245).
Accordingly, the motion to compel respondent to participate in a lineup is granted. Settle order providing for date, time and place of lineup and further providing that respondent shall be represented by counsel thereat.

. On appeal, the United States Supreme Court (Morales v New York, 396 US 102, 105-106), remanded the case for an evidentiary hearing on the circumstances leading to Morales’ detention, holding that "in the absence of a record that squarely and necessarily presents the issue and fully illuminates the factual context in which the question arises, we choose not to grapple with the question of the legality of custodial questioning on less than probable cause for a full-fledged arrest.”

. The Court of Appeals held that the defendant was not under arrest at the time he was frisked noting that "Detention for a short and reasonable period in order to question is not an arrest, and such a right of inquiry was rooted in early English practice and approved by the common-law courts and commentators”. (18 NY2d 238, 244). The Supreme Court, in affirming the conviction (see Sibron v New York, 392 US 40) bypassed the question of the right of the police to detain a suspect for purposes of investigation and held that at the time of the search probable cause for arrest existed (pp 66-67). In Terry v Ohio (392 US 1), however, the court held that where a police officer has reason to believe that he is dealing with an armed individual, detention for a reasonable search for weapons is permitted even though no probable cause for arrest exists.