135 N.J. Super. 190 (1975)
342 A.2d 903
IN RE: INVESTIGATION OF A MULTI-VEHICLE ACCIDENT.
Superior Court of New Jersey, Law Division.
June 24, 1975.
*192 Mr. Henry E. Rzemieniewski for W. (Messrs. Chase, Rzemieniewski and Gorney, attorneys).
Mr. Leonard N. Arnold, First Assistant Prosecutor, for the State of New Jersey (Mr. Stephen R. Champi, Somerset County Prosecutor, attorney).
MEREDITH, J.S.C.
This matter comes before the court by way of a motion by the State to detain W. for a period not to exceed three hours for the purpose of taking his photograph to be used in a photographic lineup. In addition, the State requests authority to take paint samples from and photographs of a 1973 Ford half-ton pickup truck.
In support of its application, the State has submitted an affidavit from a Hillsborough Township police officer which relates the following facts.
On April 5, 1975 a motor vehicle accident occurred involving two cars and one pickup truck. A witness to the accident has told the affiant that a green pickup truck was involved in the accident and that its driver was an approximately 38 to 40-year-old white male, having short black hair with white streaks in it. After conducting an investigation the affiant has found a truck belonging to W. which matches the description of the truck involved in the accident. Furthermore, the affiant has seen the W. truck and it has *193 sustained recent damage to its right side which, according to witnesses, corresponds to the damage sustained by the truck in the accident. Also, W. matches the description of the driver of the green truck involved in the accident. The paint sample that is requested is to be compared with paint left on a car as a result of the collision, and the photograph of W. is to be used in a photographic lineup for the witness who indicates that he could probably identify the driver of the hit-and-run truck.
In the court's view the requests made here by the State are functionally the equivalent of an application for a search warrant. Procedurally, this motion differs from a search warrant in that the adversary argument as to validity is taking place prior to, rather than after, the contemplated action. Nevertheless, the court feels that the touchstone of the inquiry in regard to the State's requests, must be the Fourth Amendment.
The court believes that it is appropriate to deal with the State's requests as to W.'s person and as to his truck separately because of the differing considerations involved. Attention will first focus upon the request for detention in order to take a photograph.
The court finds that the State's detention request involves one intrusion within the meaning of the Fourth Amendment. The seizure of the person of W. which would be necessary in order to effectuate the three-hour detention in clearly a seizure in the constitutional sense. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973). However, the taking of his photograph is not. A person's facial features are constantly exposed to the public and what a person knowingly exposes to the public is not a subject of Fourth Amendment protection. Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967).
At the outset it should be noted that during oral argument the State conceded that no probable cause in the traditional *194 sense exists for the search or the arrest of W. The court agrees with the evaluation and so holds.
Instead of relying on traditional probable cause, the State grounds its request on what it terms a developing body of case law subsequent to Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), in regard to the obtaining of body exemplars. In Davis the Supreme Court reversed a state rape conviction of a 14-year-old boy because his incriminating fingerprints, admitted in evidence, were taken by police in the course of an illegal detention of the boy.
In order to understand the thrust of the State's position it is necessary to specifically discuss some of the more pertinent cases that are raised.
Wise v. Murphy, 275 A.2d 205 (D.C. Ct. App. 1971), is a case in which the District of Columbia Court of Appeals affirmed a lower court order requiring a suspect in a rape case to be detained for a lineup. The basic facts are that the victim of the rape had stated that one photograph among pictures of possible suspects revealed features similar to those of the man that had assaulted her. The court concluded that even though the facts did not rise to the level of probable cause, the procedure employed did meet the Fourth Amendment requirement of reasonableness.
The present case involves the offense of leaving the scene of an accident. This is substantially less serious than a rape investigation. Without either embracing or rejecting the holding in Wise v. Murphy, the court feels that Wise distinguishes itself from the present matter by the following language:
Under proper circumstances, and against a backdrop of required specificity, such a device as court-ordered lineups can prove to be reasonably related to governmental and private rights, and thus a constitutional balance regarding both. Grave reservations exist, however, as to whether this type of court-ordered lineup, not connected with a formal arrest, may be used constitutionally in other than serious felonies involving grave personal injuries or threats of the *195 same. The governmental interest, though serious, is not of the same magnitude in commercial crimes involving property or money such as forgery or false pretenses or other less serious offenses. While the "sounder course" is to view all intrusions "in light of all exigencies of the case", Terry v. Ohio, 392 U.S. 1, 17 n. 15, 88 S.Ct. 1868, 1878, [20 L.Ed.2d 889] (1968), it would seem that some offenses, not involving serious personal injury or danger, weigh less as a part in the "central element in the analysis of reasonableness." Id. In such cases it is highly likely that the governmental interests in law enforcement cannot outweigh the right of liberty, or freedom from being ordered into even the most antiseptic lineup, under circumstances short of traditional probable cause for formal arrest. Of course, each case must be considered on its own facts. [at 216]
In re Fingerprinting of M.B., 125 N.J. Super. 115 (App. Div. 1973), involved the propriety of an order requiring the fingerprinting of a group of students. The basis for the order was that a school class ring had been found 44 feet away from the body of a murder victim. In affirming the order, the Appellate Division relied upon the following language from Davis v. Mississippi, supra:
* * * It is arguable, however, that because of the unique nature of the fingerprinting process, such detentions might, under narrowly defined circumstances, be found to comply with the Fourth Amendment even though there is no probable cause in the traditional sense. See Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). Detention for fingerprinting may constitute a much less serious intrusion upon personal security than other types of police searches and detentions. Fingerprinting involves none of the probing into an individual's private life and thoughts that marks an interrogation or search. Nor can fingerprint detention be employed repeatedly to harass any individual, since the police need only one set of each person's prints. Furthermore, fingerprinting is an inherently more reliable and effective crime-solving tool than eyewitness identifications or confessions and is not subject to such abuses as the improper line-up and the "third degree." Finally, because there is no danger of destruction of fingerprints, the limited detention need not come unexpectedly or at an inconvenient time. [394 U.S. at 727, 89 S.Ct. at 1397-1398]
Thus, it seems that the court's decision is grounded upon the unique nature of the fingerprinting process. The present application is for a detention in order to take a photograph. This does not involve the "unique nature" of fingerprinting *196 with its "inherently more reliable and effective crime-solving" value. Therefore, the court finds that In re Fingerprinting of M.B., supra, is distinguishable upon its facts.
The State also makes reference to the Supreme Court decisions in United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), and United States v. Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973). These cases held that federal grand jury subpoenas requiring witnesses to produce voice exemplars and handwriting samples did not violate Fourth Amendment rights. The basis of these decisions was that a grand jury subpoena was not a seizure within the Fourth Amendment (410 U.S. at 9, 93 S.Ct. at 769) and that the production of a person's voice and handwriting did not violate an expectation of privacy protected by the Fourth Amendment (410 U.S. at 14, 93 S.Ct. at 771-772 and 410 U.S. at 21-22, 93 S.Ct. at 776). Thus, these cases did not involve any intrusion in the Fourth Amendment sense and therefore, no Fourth Amendment showing of reasonableness was necessary. The present application, on the other hand, does contemplate a seizure which must be justified by Fourth Amendment standards.
The court need not survey the other specific cases raised by the State. It is, however, significant to point out that cases that have allowed pre-arrest detentions in order to obtain body exemplars have generally involved murder, sexual abuse or other serious crimes. See Cupp v. Murphy, supra; Early v. People, 178 Colo. 167, 496 P.2d 1021 (Sup. Ct. 1972), and Merola v. Fico, 81 Misc.2d 206, 365 N.Y.S.2d 743 (Sup. Ct. 1975).
Since the requested order in regard to W. envisions a Fourth Amendment intrusion, the court must judge it in light of the underlying standard of the Fourth Amendment that is, the standard of unreasonableness. State v. Miller, 47 N.J. 273, 278 (1966); State v. Davis, 50 N.J. 16, 22 (1967); State v. McKnight, 52 N.J. 35, 58 (1968); Elkins *197 v. United States, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669 (1960); Terry v. Ohio, supra, 392 U.S. at 9, 88 S.Ct. at 1873; Wyman v. James, 400 U.S. 309, 318, 91 S.Ct. 381, 386, 27 L.Ed.2d 408 (1971). Traditionally, probable cause has been the minimum requirement for a reasonable search permitted by the Constitution. State v. Waltz, 61 N.J. 83, 87 (1972); Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). However, there is no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails. Camara v. Municipal Court, supra, 387 U.S. at 536-537, 87 S.Ct. at 1735.
In the present matter the need to search grows out of a police investigation of a hit-and-run motor vehicle accident. The Fourth Amendment intrusion that is entailed in the State's request is the seizure of an individual and his three-hour detention at a police station. In balancing these two interests, the court concludes that the State's detention request must be denied. The reasons for this conclusion are that first, there is no probable cause sufficient for the issuance of a warrant and secondly, the requested action is unreasonable in view of the limited investigative facts submitted by the State, the seriousness of the intrusion involved in the station-house detention, and the gravamen of the offense under investigation.
The State's requests in reference to the W. truck are to take paint samples from its exterior and to take photographs of it.
Motor vehicles have occupied a special place in search and seizure law in that an exception to the warrant requirement has been established in regard to stopping and searching a vehicle. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Chambers v. Maroney, supra. This warrant exception has developed because of the mobility inherent in a motor vehicle. It has not, however, *198 stripped motor vehicles of Fourth Amendment protections. Motor vehicle or no motor vehicle, there must be probable cause for its search. Almeida-Sanchez v. United States, 413 U.S. 266, 269, 93 S.Ct. 2535, 2537-2538, 37 L.Ed.2d 596 (1973).
These principles have recently been reaffirmed by the Supreme Court in Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). In Cardwell the police had probable cause to arrest the defendant for murder and they also had probable cause to believe that the defendant's car was used in the commission of the crime. Subsequent to his arrest the police towed the defendant's car from a commercial parking lot to their impoundment lot. There they conducted a warrantless examination of the car which revealed that a tire matched the cast of a tire impression made at the crime scene and that paint samples taken from the defendant's vehicle were not different from foreign paint on the fender of the victim's car. In upholding the warrantless actions of the police, the court said:
With the "search" limited to the examination of the tire on the wheel and the taking of paint scrapings from the exterior of the vehicle left in the public parking lot, we fail to comprehend what expectation of privacy was infringed * * * Under circumstances such as these, where probable cause exists, a warrantless examination of the exterior of a car is not unreasonable under the Fourth and Fourteenth Amendments. [417 U.S. at 591, 94 S.Ct. at 2470]
The State's application in the present matter to take paint scrapings from the W. truck is a seizure of part of the physical exterior of the vehicle in the Fourth Amendment sense. In the court's view, this action entails an invasion into a constitutionally protected area. Although this search is far less intrusive than the search and seizure of a person, it is nevertheless still a search and it must be so justified. As discussed earlier, all parties agree that there is no probable cause sufficient to link W. to the incident under investigation. The only other relevant facts are that *199 the accident involved a green pickup truck and that the W. vehicle is green and has damage to its right side. Without a firm nexus between W., the owner of the vehicle, and the traffic accident, the facts about his truck are too tenuous to give rise to probable cause sufficient to authorize a search of it. This is the primary distinction between the present application and the action in Cardwell v. Lewis, supra, in which there was probable cause for the defendant's arrest and for a belief that his car was used in the commission of the crime. Therefore, without the necessary element of probable cause, the State's request to take the paint scrapings must be denied.
Lastly, the State seeks authority to take photographs of the W. truck. In determining this request the court is aware that a motor vehicle, by its nature, is constantly exposed to the public. Therefore, the court sees no invasion into any expectation of privacy by authorizing the police to view and photograph the W. truck. This decision is reached in deference to the principle that "insofar as Fourth Amendment protection extends to a motor vehicle, it is the right to privacy that is the touchstone of our inquiry." Cardwell v. Lewis, supra, 417 U.S. at 591, 94 S.Ct. at 2470. Thus, since no Fourth Amendment interest is being violated, the court grants this part of the State's application. In executing this order the court cautions the State not to infringe upon or interfere with the normal workings of the W. household.
In reaching its conclusions, the court is not endeavoring to frustrate legitimate law enforcement interests. Rather, its goal is to insure effective administration of constitutional rights. This is the ultimate concern in balancing the rights of the individual and the rights of the society in general.
The State's motion is denied in part and granted in part in accordance with this opinion.