William Rigler, J.
The instant proceeding raises important and novel issues concerning the permissibility of fingerprinting juveniles.
By a petition filed with this court on March 5, 1975, respondent was charged with being a juvenile delinquent by virtue of having allegedly broken into the premises of a paint company, *167 damaging property therein and taking cash and property therefrom.
On July 14, 1975, this court commenced the fact-finding hearing. Respondent, at the hearing requested a voir dire concerning the admissability of fingerprints taken of the respondent by members of the police department prior to his arrest.[1] The court granted respondent’s application and conducted an extensive voir dire on July 14 and 17 at which testimony was elicited from, inter alia, the detectives who printed and arrested respondent, the respondent himself and his mother. Before addressing itself to the legal issues posed herein, the court considers an extensive review of the facts to be in order.
At some hour between 4:30 p.m. on December 20, 1974 and 7:30 a.m. on December 23, 1974, the premises of the Dutch Masters Paint & Chemical Co., Ltd., were burglarized. As said premises had been broken into on numerous prior occasions, a special police unit had been assigned to investigate the prior burglaries. In the course of the investigation, following the burglary in question, latent fingerprints were found on two objects inside the premises.
The next item in the sequence of events was testified to by Detective Hasten, the person who eventually fingerprinted respondent. Apparently, on February 10, 1975, the detective obtained "confidential information”, to wit, the names of three persons who might have been involved in the December, 1974 burglaries, one of whom was the respondent, Pedro Z. Thereafter, on February 15, 1975, Detective Hasten, accompanied by one or more police officers, went to respondent’s home for the purpose of obtaining a set of fingerprints to compare with those found at the scene of the crime. Respondent’s mother answered the door and spoke briefly with the detectives who identified themselves to her. She advised them that respondent was not at home at the time and that she did not know his whereabouts. Apparently, a next door neighbor acted as a Spanish interpreter between the parties. The testimony conflicted as to whether the officers explained the nature of their call on this occasion.
On February 17, 1975, Detective Hasten and one or two *168 fellow investigating officers again came to respondent’s home in order to take respondent’s prints. None of the officers were in uniform and their shields were concealed in their pockets. Respondent’s mother answered the door and this time advised the officers that her son was at home, sleeping! The police entered the home and waited in the living room while respondent’s mother summoned him. Thereafter, the officers and respondent entered the kitchen and sat down at a table. Again, the testimony differed as to whether respondent’s mother was advised of the purpose of the officer’s visit to the home. In fact, she disputed that she was even present in the kitchen when the police spoke with respondent and took his fingerprints.
As to the conversations had with respondent on the 17th, there is no question that respondent was told by Detective Hasten that the detective had heard that respondent might have been involved in the burglary of the Dutch Masters premises. Furthermore, respondent was asked whether he had participated in the crime and responded that he hadn’t. Detective Hasten then stated words to the effect that, respondent, by permitting the police to take his fingerprints, could prove that he had not been involved in the incident. It is not entirely clear as to whether respondent was advised of the existence of the two sets of prints taken from the Dutch Masters premises. Detective Hasten further testified that he gave respondent "limited Miranda warnings”, i.e., "you don’t have to speak to me or have your prints taken.” The detective admitted that prior to the printing of respondent on February 17, the police did not know that respondent had been involved in the December, 1974 burglary. Finally, respondent was arrested on February 19, 1975.
The discussion of the legal issues raised herein commences with an examination of the statutory bases for fingerprints of juveniles. The Family Court Act contains no provisions regarding same. In such circumstances, we look to the CPL for guidance. CPL 160.10 sets forth the duties of police and the procedures to be followed with respect to fingerprinting of adults following an arrest or arraignment. There is no provision in the CPL or any other relevant statute which authorizes or otherwise concerns the printing of adults prior to arrest.[2] This court can envision some instances where an adult *169 could make a voluntary submission to fingerprinting where he is fully aware of his rights. From the foregoing, the court concludes that, if at all permissible, the fingerprinting of juveniles prior to arrest must be strictly limited and closely scrutinized. At the least, an application should be addressed to the court before any prints are sought to be obtained. This view is borne out by numerous recent cases which involved attempts to obtain "physical evidence” from adults prior to their having been charged with any crime. (See, e.g., Matter of District Attorney of Kings County v Angelo G., 48 AD2d 576; Matter of Goldstein, NYLJ, Jan. 20, 1975, p 18, col, 3; Matter of Merola v Fico, 81 Misc 2d 206; Matter of Mackell v Palermo, 59 Misc 2d 760.) The majority view of the courts in the above-cited cases was that probable cause for an arrest would have to be demonstrated before the court would grant the application to obtain the physical evidence sought. In the instant case, by the admission of the detective who fingerprinted respondent, there was no probable cause or even reasonable basis upon which to arrest respondent prior to his being printed. It is, therefore, clear that this court would not have granted an application to have respondent fingerprinted.
However, it is argued herein that respondent and his mother consented to the prints being taken, and respondent’s attorneys admit that, although respondent had a right to refuse to be fingerprinted, he could have validly consented thereto. It is clear from the Supreme Court’s decision in Davis v Mississippi (394 US 721) that fingerprint evidence is subject to the proscriptions of the Fourth and Fourteenth Amendments. (See, also, People v Gates, 24 NY2d 666.) It, therefore, follows that the burden rests heavily upon the governmental authority to demonstrate that respondent knowingly, voluntarily and intelligently waived his right to refuse to be printed. (Bumper v North Carolina, 391 US 543; People v Whitehurst, 25 NY2d 389.) Furthermore, the determination of whether respondent gave a valid consent must be determined from the totality of all the circumstances herein. (Schneckloth v Bustamonte, 412 US 218.) These include, inter alia, the respondent’s age, educational background and intelligence, his knowledge of his right to refuse to consent, and the actions of the police in obtaining the prints.
It is the opinion of this court, after carefully reviewing the testimony of all the witnesses at the voir dire, that neither respondent nor his mother validly consented to the taking of *170 fingerprints on February 17, 1975. The court does not believe that either was able to comprehend the nature or consequences of the "request” by the police to take respondent’s fingerprints. Despite attempts to discredit their testimony, both respondent and his mother did not appear to have sufficient educational or other relevant background so as to be able to intelligently decide to permit the police to print respondent.[3] At best, they merely "acquiesced” to lawful authority in not refusing to allow printing.
As the court has found that respondent did not consent to the fingerprinting performed on February 17, 1975, respondent’s motion to suppress such fingerprints is granted. However, if an independent basis for probable cause to arrest respondent is demonstrated at the continuation of the fact-finding hearing, the court might entertain an application to have respondent refingerprinted. On the other hand, if no such independent basis is shown, the proceeding will most probably be dismissed.

. The determination of a prior motion by Corporation Counsel concerning the admissibility of said prints and the reprinting of defendant is not relevant to the issues presented herein as said determination was based upon the mistaken assumption that the prints in question were obtained from respondent subsequent to his arrest.

. It is interesting to note that a recent amendment to the Family Court Act (§ 753-a; L 1975, ch 837, § 5, eff Sept. 1, 1975) only permits the fingerprinting of juveniles who have been adjudicated to have committed acts which if done by an adult would constitute a class A or class B felony or robbery in the second degree.

. For example, respondent’s mother did not appear to have a good command of the English language and respondent, by his testimony, conveyed to the court an impression of limited intelligence.