PEOPLE v MARSHALL

1. SEARCHES AND SEIZURES—PROBABLE CAUSE—DETENTION ORDERS—
    PHYSICAL IDENTIFICATION—REASONABLE CAUSE—LEGISLATIVE
    ACTION—COURT RULES.

    There is a clear trend in state and Federal courts toward permit-
    ting court-ordered detentions of criminal suspects for the lim-
    ited purpose of obtaining physical identification evidence in the
    absence of probable cause in the traditional sense where there
    is reasonable cause to believe that the information sought will
    be of material aid in determining whether the designated
    person committed the offense alleged, but in the absence of
    legislation or rule of the Michigan Supreme Court the Court of
    Appeals will not sanction such hybrid forms of search war-
    rants.

2. SEARCHES AND SEIZURES—SEARCH WARRANTS—OTHER NAMES—
    WARRANT REQUIREMENTS.

    It matters not what name is given the instrument under which a
    suspect is temporarily detained and searched; an instrument is
    a valid search warrant if it complies in all respects with the
    requirements for a search warrant.

3. SEARCHES AND SEIZURES—SEARCH WARRANTS—PROBABLE CAUSE—
    AFFIDAVITS—DETENTION—NATURE OF WARRANT—TESTS.

    There was sufficient probable cause for an impartial magistrate
    to issue a warrant for the limited purpose of obtaining blood
    and hair samples from a particularly described homicide sus-
    pect where the warrant was supported by an affidavit stating
    facts supporting the theory that the homicides were committed
    by a left-handed person wearing a relaxed afro hairdo who
    gained entry without force and which stated that the suspect to
    be searched, a relative of two of the victims, had given a false
    alibi and was a left-handed person with a history of assaultive
    behavior who frequented a particular barber shop where the
    relaxed afro process was employed; the test of probable cause
    depends upon the nature of the warrant that is sought.

REFERENCE FOR POINTS IN HEADNOTES
[1–3] 5 Am Jur 2d, Arrest §§ 26, 28.

Appeal from Recorder's Court of Detroit, Samuel H. Olsen, J. Submitted April 6, 1976, at Detroit. (Docket No. 25020.) Decided May 28, 1976. Leave to appeal denied, 397 Mich —.

Mark A. Marshall was charged with first-degree murder. Defendant moved to suppress hair and blood samples from evidence. Motion denied. Defendant appeals by leave granted. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant.

Before: D. F. WALSH, P. J., and ALLEN and M. J. KELLY, JJ.

ALLEN, J.

"To none will we sell, to none will we deny or delay, right or justice."

—Magna Carta (1215)

This interlocutory appeal raises the question of the constitutional validity of nonstatutory procedures under which the defendant was taken into custody, allegedly without probable cause to arrest, under an order issued by a judicial officer granting the temporary detention of defendant for the purpose of obtaining a blood type sample and a hair sample.

On August 19, 1974, the bodies of Wallace Marshall, his wife Constance, and one Beatrice Williams were discovered at the Marshall residence on LaSalle Street in Detroit. A fourth victim,

Beatrice Blount, was found barely alive. She died at the hospital not long thereafter. The weapons used were a meat cleaver and two butcher knives apparently taken from the kitchen of the home by one or more left-handed persons who police theorized had access to the scene of the crimes. Specifically, the fact that the premises were locked at the time the victims were found, despite chipping around the lock on the kitchen door which appeared to have been carried out from the interior, indicated the victims may well have known their assailant(s). Nothing of value was reportedly taken. Strands of hair, other than the victims', classified as from one wearing a "relaxed Afro" were found on the night garment of Constance Marshall. Moreover, sperm was found on the clothing of Constance Marshall and Beatrice Williams, indicating the perpetrator masturbated over the bodies.

On September 13, 1974, the Wayne County Prosecutor's Office requested that a Detroit Recorder's Court judge issue a temporary detention order against defendant so police could secure blood and hair samples to compare with the sperm[1] and hair recovered from the scene of the crimes. In a supporting affidavit, the prosecutor meticulously listed the reasons why the investigation had focused upon defendant. Defendant is Wallace Marshall's son, and Constance Marshall's stepson. He is left-handed, wears a "relaxed Afro" hairdo and has a history of assaultive crime. The affidavit also indicated that there may well have been some friction between defendant and his father, that anonymous phone calls were received by police informing that defendant was involved in the crime, and that an alibi witness for defendant was not likely telling

---

[1] It is possible to tell blood type from sperm.

the truth. The prosecutor's petition stated that no search warrant had been sought prior to the request for a detention order because it was felt that sufficient evidence establishing probable cause had not yet been recovered and that "the investigation * * * has proceeded as far as possible by the employment of the regular facilities available".

The court granted the request but, in lieu of issuing a search warrant, signed an order captioned "Order Granting Temporary Detention of Mark Marshall For The Purpose of Obtaining A Blood Sample and Hair Sample". The order contained conditions that the detention last just long enough to secure hair and blood samples, that defendant be given the option of having his own physician take the blood sample, that counsel may be present, and that no other search be made during the detention. On September 16, 1974, defendant was taken into custody, the samples were obtained, and he was released. On September 19, 1974, police obtained a search warrant and seized a pair of undershorts, a red cap, and a square piece of foam rubber from defendant's residence.[2] Defendant was arrested on October 8, 1974, and charged with four counts of murder. Following preliminary examination on October 18, 25 and 28, 1974, he was bound over on all counts to Detroit Recorder's Court. On February 18, 1975, defendant filed a motion to suppress the hair and blood samples on the basis that said evidence was the product of an unreasonable search and seizure. From an opinion and order denying the motion entered on July 3, 1975, defendant successfully sought leave to appeal.

The briefs of the parties are comprehensive. The essence of the position taken by learned counsel

---

[2] Defendant did not live with his father.

for defendant may be stated thusly: the Federal and state constitutions protect a person against unreasonable searches and seizures; whether based upon a warrant or not, arrests and searches must be grounded upon probable cause to be reasonable; the order of detention in the instant case is a search warrant masking under a different name; since the detention order was admittedly issued, in the absence of probable cause to arrest, the fruits of the unreasonable search and seizure should have been suppressed.

The people point out that temporary detentions need not always be based upon a showing of probable cause in order to be reasonable. *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). Relying primarily upon *Davis v Mississippi*, 394 US 721; 89 S Ct 1394; 22 L Ed 2d 676 (1969), the people contend that temporary detentions for the purpose of securing physical character evidence are permissible where circumscribed procedures are followed pursuant to judicial authorization, even absent probable cause. Citing cases from other jurisdictions which support police action of the type involved here,[3] the people argue that since (a) there was reason to suspect defendant was involved in the crime, (b) the detention order was judicially authorized, (c) the scope of the search was restricted, and (d) the intrusion relatively minor, there was no violation of the defendant's constitutional rights.

We are thus requested to decide the extremely delicate issue of whether detaining a criminal suspect pursuant to a court order without probable cause to arrest for the object of taking physical character evidence is permissible under the Federal and state constitutions. The issue becomes

---

[3] Authorities cited by plaintiff appear *infra*.

even more delicate because, as is hereinafter noted, legislation which would have authorized the procedure employed in the present case, though recommended by a special committee of the Michigan Bar, has not been enacted.

The Fourth Amendment of the United States Constitution provides that:

"The right of the people to be secure in their persons, houses, paper, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."[4]

Although the touchstone of the Fourth Amendment is "reasonableness", *Cooper v California,* 386 US 58; 87 S Ct 788; 17 L Ed 2d 730 (1967), with some notable exceptions,[5] probable cause is re-

---

[4] Article I, § 11 of the Michigan Constitution, 1963, provides: "The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or thing shall issue without describing them, nor without probable cause, supported by oath or affirmation."

[5] The six basic exceptions to the requirement for a search warrant are:

1. Consent. *Schneckloth v Bustamonte,* 412 US 218; 93 S Ct 2041; 36 L Ed 2d 854 (1973).

2. Search incident to a lawful arrest. *Chimel v California,* 395 US 752; 89 S Ct 2034; 23 L Ed 2d 685 (1969).

3. Where there is probable cause to search plus exigent circumstances. *Johnson v United States,* 333 US 10; 68 S Ct 367; 92 L Ed 436 (1948). *Schmerber v California,* 384 US 757; 86 S Ct 1826; 16 L Ed 2d 908 (1966).

4. In hot pursuit. *Warden v Hayden,* 387 US 294; 87 S Ct 1642; 18 L Ed 2d 782 (1967).

5. Border search. *United States v Brignoni-Ponce,* 422 US 873; 95 S Ct 2574; 45 L Ed 2d 607 (1975).

6. Stop and Frisk. *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). *Adams v Williams,* 407 US 143; 92 S Ct 1921; 32 L Ed 2d 612 (1972). *See Davis v Mississippi,* 394 US 721; 89 S Ct 1394; 22 L Ed 2d 676 (1969).

Detention for the purpose of obtaining fingerprints, hair, blood or

quired to support a lawful search or seizure whether with or without a warrant. *Coolidge v New Hampshire,* 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971), *People v Lansing Municipal Judge,* 327 Mich 410; 42 NW2d 120 (1950). See also *United States v Rubin,* 474 F2d 262 (CA 3, 1973), *Commonwealth v Tate,* 237 Pa Super 104; 346 A2d 570 (1975).

The mainspring in justification of the unique—to Michigan at least—legal process employed in the instant case stems from the language of the Supreme Court in *Davis v Mississippi,* 394 US 721; 89 S Ct 1394; 22 L Ed 2d 676 (1969). There, in ruling that fingerprint evidence obtained via a police round-up of several blacks and introduced at defendant's trial on a charge of rape should have been suppressed as the fruit of an unconstitutional seizure, the organ of the Court, Justice Brennan, made the following observations:

"Detentions for the sole purpose of obtaining fingerprints are no less subject to the constraints of the Fourth Amendment. It is arguable, however, that, because of the unique nature of the fingerprinting process, such detentions *might,* under narrowly defined circumstances, be found to comply with the Fourth Amendment even though there is no probable cause in the traditional sense. See *Camara v Municipal Court* * * * . Detention for fingerprinting may constitute a much less serious intrusion upon personal security than other types of police searches and detentions. Fingerprinting involves none of the probing into an individual's private life and thoughts that marks an interrogation or search. Nor can fingerprint detention be employed repeatedly to harass any individual, since the police need only one set of each person's prints. Furthermore, fingerprinting is an inherently more reliable

other physical evidence is classified under the stop and frisk exception.

and effective crime-solving tool than eyewitness identifications or confessions and is not subject to such abuses as the improper line-up and the 'third degree'. Finally, because there is no danger of destruction of the fingerprints, the limited detention need not come unexpectedly or at an inconvenient time. For this same reason, the general requirement that the authorization of a judicial officer be obtained in advance of detention would seem not to admit of any exception in the fingerprinting context. We have no occasion in this case, however, to determine whether the requirements of the Fourth Amendment could be met by narrowly circumscribed procedures for obtaining, during the course of a criminal investigation, the fingerprints of individuals for whom there is no probable cause to arrest." 394 US at 727–728 (Emphasis added.)

Although the Court explicitly "left open the question whether consistently with the Fourth and Fourteenth Amendments, narrowly circumscribed procedures might be developed for obtaining fingerprints from people when there was no probable cause to arrest them", response to the apparent invitation of the Court has not been insignificant.[6] In 1969, the Colorado Supreme Court adopted Court Rule 41(b) authorizing detention of a person for the purpose of fingerprinting on less than probable cause.[7] Moreover, a New Jersey Court granted a petition to compel male members of an eighth grade class to submit to fingerprinting when a class ring was found near the body of a homicide victim and fingerprints, other than the

---

[6] *United States v Dionisio,* 410 US 1, 11; 93 S Ct 764; 35 L Ed 2d 67 (1973). *United States v Mara,* 410 US 19; 93 S Ct 774; 35 L Ed 2d 99 (1973). Each of these cases sustained the constitutionality of an order issued by the lower court ordering the defendant to appear before the grand jury and furnish handwriting and voice exemplars. The Court ruled this could be done without prior proof of the "reasonableness" of the order.

[7] Note, *Detention to Obtain Physical Evidence Without Probable Cause; Proposed Rule 41.1 of The Federal Rules of Criminal Procedure,* 72 Col L Rev 712, 715 (1972).

victim's, were discovered on the victim's vehicle upon recovery. *In re Fingerprinting of M B,* 125 NJ Super 115; 309 A2d 3 (1973).[8] Statutory provisions in Arizona,[9] Idaho[10] and North Carolina[11] authorized court order detentions on less than probable cause for the purpose of obtaining various physical evidence such as hair and blood samples. Utah has provided for judicially authorized detentions for lineups.[12] Further, diverse conferences and committees have proposed similar measures.[13] In Michigan a special committee appointed by the Michigan Bar Commissioners to promulgate recommended revisions of the Code of Criminal Procedure concluded its work by suggesting revisions to search and seizure legislation. One of the committee suggestions was legislation authorizing an order for "nontestimonial identification" under which upon affidavit stating that "there is reasonable cause" to believe that the information sought will be of material aid in determining whether the designated person committed the alleged offense, a circuit court or recorder's court judge might compel the designated person to submit to fingerprinting and the submission of blood, urine, and hair specimens including handwriting and voice exemplars.[14] Though the proposed legislative change was submitted in late 1974 no action by the Legislature has come forth.

---

[8] *Compare, In re Multi-Vehicle Accident,* 135 NJ Super 190; 342 A2d 903 (1975), Request for order compelling that "W" be detained on less than probable cause for photographing to be shown to witness to a hit and run accident denied.

[9] 5 Ariz Rev Stat Ann § 13-1424 (Supp, 1973).

[10] 4 Idaho Code § 19-625 (Supp, 1974).

[11] NC Gen Stat § 15A-271 *et seq.*

[12] Utah Code Ann § 77-13-37 (Supp, 1973).

[13] *See* note 6, *supra,* and note 14, *infra.*

[14] *See* Israel, *Legislative Regulation of Searches and Seizures: The Michigan Proposals,* 73 Mich L Rev 222 (1974). The particular statutory provisions referred to above appear at 310–314.

The constitutionality of the Arizona detention statute was recently upheld by that state's Supreme Court in *State v Grijalva,* 111 Ariz 476; 533 P2d 533 (1975). There, defendant, a possible suspect in a rape, burglary, and homicide, was detained pursuant to a court order, and was fingerprinted and photographed. Police also removed hair from his person. Following his conviction, defendant appealed to the Supreme Court claiming the evidence was secured in violation of his Fourth Amendment rights. The Court swiftly disposed of the defendant's arguments, concluding that:

"The concept of reasonableness requires a balancing between the public necessity and the extent to which an individual interest in privacy is invaded. Certainly, the interest of society in the investigation of felonies is very high and the statute requires that it must be otherwise impossible to obtain the necessary identification evidence except in this manner.

"The degree of intrusion into the person's privacy is relatively slight. Photographs, more so than fingerprints, involve none of the probing that the *Davis* court found to make a search of an unreasonable nature. Similarly, clipping several head hairs is only the slightest intrusion upon the body, if any at all, and does not constitute anything unreasonable." 533 P2d at 536.

Also see *Long v Garrett,* 22 Ariz App 397; 527 P2d 1240 (1974).[15]

No judicial precedent was found, however, which

---

[15] For a review in detail of the Arizona detention statute, *see* Comment, *Detention for Taking Physical Evidence Without Probable Cause,* 14 Ariz L Rev 132, 157 (1972). There, the commentator concludes that: "The emerging notion of detention for the purpose of obtaining physical evidence on less than probable cause has received some judicial approval in *Davis v Mississippi,* and other cases. Nevertheless, it is clear that the detention authorized by section 13-1424 is a much greater invasion of personal interest on less than probable cause than anything that the Supreme Court has heretofore found compatible with the fourth amendment."

sanctioned the use of a court order on less than probable cause in order to take blood samples from a suspect's person. Indeed, the constitutionality of such a procedure appears doubtful in light of *Schmerber v California,* 384 US 757; 86 S Ct 1826; 16 L Ed 2d 908 (1966). In that case, the Supreme Court upheld the warrantless seizure of blood from an arrested person for the purpose of determining alcoholic content, upon the grounds that exigent circumstances—alcohol in blood diminishes with time—necessitated the seizure without first obtaining a warrant. The Court made it clear that intrusions into the human body are on an equal plane with searches of dwellings, and thus, subject to the warrant requirement in the absence of exigent circumstances.[16] Further, the Court indicated that there must be probable cause—warrant or no warrant.[17]

Because blood type is genetic in nature and not subject to change,[18] it would seem that a search warrant must be obtained.[19] In summary, although there is a clear trend toward permitting court-

---

[16] "Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into human body are concerned." *Schmerber v California,* 384 US 757, 770; 86 S Ct 1826; 16 L Ed 2d 908 (1966).

[17] "The interest in human dignity and privacy which the Fourth Amendment protects forbids any such intrusions on the mere chance that desired evidence might be obtained. *In the absence of a clear indication that in fact such evidence will be found,* these fundamental human interest require law officers to suffer the risk that such evidence may disappear unless there is an immediate search." (Emphasis supplied.) *Schmerber, supra,* 770.

[18] *Graves v Beto,* 301 F Supp 264 (ED Tex, 1969), aff'd, 424 F2d 524 (CA 5, 1970).

[19] *See Mills v State,* 28 Md App 300, 307; 345 A2d 127, 132 (1975): "[T]here is no exigent-circumstances exception to the warrant requirement of the Fourth Amendment where the State desires to test an individual's blood type. It was error for the trial court to order the blood test without strict compliance with the warrant requirements contained in Art. 27, Md. Code Annot. § 551 (1974 Supplement)." *See also United States v Allen,* 337 F Supp 1041 (ED Pa, 1972).

ordered detentions for the purpose of obtaining physical identification evidence in the absence of probable cause in the traditional sense, the constitutionality of such procedures is far from settled. Even if it is assumed that the seizure of a person based upon less than probable cause is permissible for the purpose of securing certain identification evidence under limited circumstances, the degree of intrusions allowed by some of the statutory provisions appears questionable under current law.[20]

Be that as it may, this Court does not, nor need not, reach the constitutional question posed by the parties to this case. We are not unmindful that at least two courts have sanctioned the use of court-ordered detention for the purpose of obtaining physical evidence *sans* legislative action or Supreme Court rule. *Wise v Murphy,* 275 A2d 205 (DC App, 1971), *Merola v Fico,* 81 Misc 2d 206; 365 NYS2d 743 (1975).[21] Nevertheless, in the absence of legislation or rule promulgated by the Supreme Court, we are reluctant to sanction the novel and hybrid form of search warrant which the people so forcefully urge we adopt in this case. We note that the special committee of the State Bar itself recommended that its proposals be implemented by legislation rather than by court decision.[22] The

[20] *See* Note, *Temporary Detention for Line-up Identification With Less Than Probable Cause Permissible Under the Fourth Amendment,* 18 Wayne L Rev 827 (1972), Greenberg, *The Balance of Interests Theory and the Fourth Amendment: A Selective Analysis of Supreme Court Action Since Camara,* Cal L Rev 1011, 1035–1042 (1973).

[21] In both cases the suspect of a sexual offense was ordered to appear in an identification lineup even though there was a lack of probable cause to obtain a warrant for the suspect's arrest.

[22] "This area, however, could not appropriately be left to judicial development. Michigan courts probably would be unwilling to order suspect participation in nontestimonial identification procedures in the absence of legislative authorization. In this area, unlike the stop and frisk area, there is no established precedent of the Supreme

committee's expressed preference for legislation may well be the reason its recommendations have not been adopted by rules promulgated by our Supreme Court. In the absence of legislation we conclude that, other than a search warrant as now prescribed in the Code of Criminal Procedure, MCLA 780.651; MSA 28.1259(1), there is no such "animal" in this jurisdiction as a court order authorizing the detention of a suspect for the purpose of a search.[23]

Having concluded that a search warrant was required in order to make admissible the hair and blood samples taken from defendant we turn to consideration of whether the detention order, under which defendant was searched and the samples taken, was a search warrant. Counsel for defendant says that it was. We agree. It matters not what name is given the instrument under which a suspect is temporarily detained, provided the papers comply in all respects with the requirements for a warrant. In *Mancusi v DeForte*, 392 US 364; 88 S Ct 2120; 20 L Ed 2d 1154 (1968), documents were seized under a subpoena rather than a search warrant. The people contended that the description of the document mattered little since the instrument was in effect a search warrant. However, the court held it was not a search

---

Court or the Michigan appellate courts recognizing the validity of the nontestimonial identification order." Israel, *supra,* 73 Mich L Rev at 231.

[23] "Temporary detention of a suspect for purposes of a search is permissible under a search warrant issued upon the requisite amount of probable cause." The language of MCLA 780.651; MSA 28.1259(1) is sufficiently broad to cover the search of persons for blood and hair samples: The section permits issuance of a search warrant "to search the house, building or other *location* or *place* where the property or thing which is to be searched for and seized is situated". Indeed, such language should be liberally construed in order to encourage law enforcement officials to seek search warrants. Any other construction would be difficult to square with the jurisprudence of this state. *See Lebel v Swincicki,* 354 Mich 427; 93 NW2d 281 (1958).

warrant because it was issued by the district attorney himself rather than, as in the case before us, by a neutral or detached magistrate. The implication of the opinion is that had the subpoena been issued by a judge it would have qualified as a warrant to search. Except for the controverted issue of lack of probable cause, the order issued in the present case fits hand in glove with the requirements of the Fourth Amendment and Const 1963, art 1, § 11. It was issued upon sworn affidavit, described the person to be searched, and was signed by an impartial magistrate.

The question remains whether probable cause exists to support the warrant to search. If so, the motion to suppress was properly denied. The test of probable cause depends upon the nature of the warrant that is sought.[24] The test of probable cause required for Fourth Amendment purposes for a warrant to arrest or for a warrant to search require a showing of probable cause in the traditional sense. Temporary detentions for investigative purposes as in *Terry, supra,* do not require a showing of probable cause in the traditional sense. *Davis v Mississippi, supra.* Cook, *Constitutional Rights Of The Accused, Pre-Trial Rights* (Lawyers Co-op Pub ed 1972), pp 31–32. Although the people have stipulated to the lack of probable cause to search,[25] our review of the record indicates that the people's position has consistently been far from unequivocal. The fact that the people believed or assumed that probable cause in the traditional sense may have been absent does not mean

[24] "The test of 'probable cause' required by the Fourth Amendment can take into account the nature of the search that is being sought". *Frank v Maryland,* 359 US 360; 79 S Ct 804; 3 L Ed 2d 877 (1959).

[25] At oral argument the people did not flatly state there was lack of probable cause to search but said they were concerned that there may not have been sufficient probable cause and thus they resorted to the more limited type of detention order used in the present case.

that it did not in fact exist. We have read and reread the supporting affidavit of the prosecuting attorney and conclude that it contains facts, detailed earlier in this opinion, which equate with probable cause. Unlike *Davis v Mississippi, supra,* where the court found offensive the dragnet operation in which the suspect was but one of many suspects, defendant here was the only suspect. Particularly convincing was the allegation that strands of hair were found on the nightclothes of one of the victims, not belonging to any of the victims, which scientific tests disclosed as "relaxed Afro". As used in the affidavit, this description refers to an expensive hair process performed by only a limited number of barber shops. The affidavit continues on to state that defendant spent much of his time at a particularly described barber shop where the "relaxed Afro" hair process was employed. Combined with the detailed allegations that the suspect was left-handed, that no forced entry into the home was made, that the suspect had a history of assaultive behavior and that investigation disclosed that the suspect's statement of being home at the time of the offense was false, sufficient facts were asserted to constitute probable cause for a search warrant. Accordingly, we hold that the court-ordered search was valid.

Affirmed.