OPINION OF THE COURT
Barry Kron, J.
Defendant in an omnibus motion seeks the following relief: to inspect the Grand Jury minutes and to dismiss or reduce the indictment; discovery; a bill of particulars; a Sandoval hearing; to view the physical evidence; to preserve and turn over Rosario material; suppression of physical evidence; to make additional tests on the physical evidence; and the right to make further motions. Defendant made a supplemental motion to suppress the physical evidence and to controvert the search warrant.
The first and second branches of defendant’s motion seeking inspection of the Grand Jury minutes and dismissal of the indictment are granted to the extent only that the court has inspected the Grand Jury minutes. Upon examination of the Grand Jury minutes, the court finds that there is sufficient legal evidence adduced to establish the commission by the defendant of the offenses charged in the indictment (People v Deegan, 69 NY2d 976).
The court has also inspected the instructions given by the District Attorney to the Grand Jury and finds that they are sufficient pursuant to People v Calbud, Inc. (49 NY2d 389). The court finds that the release of the Grand Jury minutes for defendant’s inspection is unwarranted at this time.
Furthermore, the presumption of regularity surrounding the proceedings of the Grand Jury cannot be overcome by defendant’s bare allegations. Accordingly, that portion of the motion seeking to dismiss the indictment is denied.
The third branch of the defendant’s motion is granted to the extent that the People are directed to comply with GPL 240.20 and 200.95.
The fourth branch of the defendant’s motion is granted to the extent that a Sandoval hearing is to be held immediately preceding the trial of this indictment.
The fifth branch of defendant’s motion to view the physical evidence is granted to the extent that the People are directed to make the physical evidence available to be inspected at a time mutually agreeable to the parties.
*157 The sixth branch of the defendant’s motion is granted to the extent that the People are directed to preserve and turn over all Rosario and Consolazio (People v Consolazio, 40 NY2d 446) material to defendant at the appropriate time.
The seventh branch of the defendant’s motion is to suppress “any blood tests conducted by the People as the sample used by the People was obtained in violation of the defendant’s constitutional rights, statutory rights under the laws of the State of New York, and in violation of Doctor Patient privilege.”
Defendant also seeks to controvert the search warrant on the ground that “the affidavit was based upon false and misleading information obtained from the informant, described as a registered nurse at North Shore University Hospital, as well as information that was privileged and confidential.” The defendant also claims that “the affiant, Detective Fred Radzewsky, knew or had reasonable cause to know that the information was false and misleading, and either intentionally, and/or recklessly disregarded the truth as he knew or had reasonable cause to know it to be in order to obtain the issuance of the search warrant.”
On April 26, 1998 the defendant, Detective Robert Bolson, was driving a vehicle which collided with another vehicle. The driver of the other vehicle died and the passenger was severely injured.
Defendant states that as a “result of the accident, the defendant received severe physical injuries, including trauma to his mouth, trauma and lacerations to his head requiring 150 stitches, and other bodily injuries.” Defendant was taken to the emergency room at North Shore Hospital where he was treated and where three blood samples were drawn. A registered nurse at the hospital, smelling alcohol on defendant’s breath, independently drew a vial of blood for the specific purpose of testing for alcohol in his blood.
On April 28, 1998, Detective Fred Radzewsky, the detective assigned to investigate the incident, obtained a search warrant to procure and test the samples of defendant’s blood held by North Shore Hospital. Detective Radzewsky’s affidavit in support of the search warrant cited information from a named and identified informant, a registered nurse at North Shore Hospital, who observed the defendant to “have a very strong odor of alcohol on his breath, both from a distance of several feet and up close, that his eyes were bloodshot and his speech was slurred.” The blood samples were subsequently tested by the New York Medical Examiner’s Office.
*158 Defendant was indicted for manslaughter in the second degree, vehicular manslaughter in the second degree, assault in the second degree, vehicular assault in the second degree, criminally negligent homicide, and two counts of operating a motor vehicle while under the influence of alcohol.
New York State law requires the use of the two-pronged “Aguilar-Spinelli test” to assess the reliability of the informant and the basis of the informant’s knowledge (People v Griminger, 71 NY2d 635, 637). The informant’s identity, her name and that she was a registered nurse at North Shore Hospital where the defendant was being treated on the night of the accident, were disclosed to the court. The informant’s detailed descriptions of her personal participation in the treatment given the defendant and her detailed observation of his condition provided a clear basis for her knowledge and established the statement’s reliability. Thus, the two prongs of the Aguilar-Spinelli test were met (People v Sharpe, 157 AD2d 808).
Defendant asserts that the “informant’s alleged representation that she smelled alcohol on defendant’s breath is a lie.” Even if the information provided by the confidential informant proved to be untrue it is “ ‘generally irrelevant’ ” and the “defendant would still not be entitled to suppression” so long as “ ‘the information provided by the citizen carried sufficient indicia of reliability to permit the officer to reasonably credit it’ ” (People v Bashian, 190 AD2d 681, 682, citing People v Ward, 95 AD2d 233, 237-238). The “Fourth Amendment protects against unreasonable governmental actions, not against misconduct by fellow citizens” (supra, at 682-683; see also, People v Bradley, 181 AD2d 316). The “informant’s statement setting out in detail criminal activity personally observed by [her] was a sufficient predicate for a finding of probable cause” (People v Anderson, 190 AD2d 741, 741-742).
The defendant charges that Detective Radzewsky, the search warrant application affiant, “knew these factual representations were false and either intentionally or recklessly failed to correct them.” Defendant further represents that he “received serious physical injuries as a result of the accident. The defendant’s head hit the windshield of his car causing both trauma and lacerations to his mouth and head. The selected representations contained in the affidavit that the defendant’s eyes were ‘bloodshot’ and his speech slurred, without also noting that the defendant received severe head trauma which could have been the cause of the bloodshot eyes and the slurred speech, put false and fraudulent impressions to the issuing magistrate.”
*159 There is “a presumption of validity with respect to the affidavit supporting the search warrant” (Franks v Delaware, 438 US 154, 171). Although the defendant sets forth a host of factors to explain his appearance in the emergency room and mentions a number of witnesses who could testify to the absence of alcohol on his breath after the accident, this potential defense evidence presents a factual trial issue and fails to establish “deliberate falsehood or * * * reckless disregard for the truth” on the part of the affiant, Detective Radzewsky (supra, at 171; see also, People v Kroll, 162 AD2d 717).
The defendant further asserts that the blood was protected by the “Doctor Patient” privilege.
At both the “trial stage” and the “pretrial stage,” the person asserting the doctor-patient privilege has “the burden of showing the appropriate immunity” (Koump v Smith, 25 NY2d 287, 294).
CPLR 4504 (a) sets out the physician-patient privilege which, “[u]nless the patient waives the privilege,” protects from disclosure any medical information acquired by the physician through the application of medical skill or knowledge. Blood alcohol test results contain the kind of information which “was the product of professional skill and knowledge and * * * a protected communication” under the statute (Dillenbeck v Hess, 73 NY2d 278, 284, n 4).
Unlike Dillenbeck (supra), however, the blood alcohol test results were not sought in the instant case. Instead, the actual blood samples, which remained in the hospital after the defendant was discharged, were obtained by means of a search warrant.
The physician-patient privilege, like the marital privilege and the clergy-penitent privilege, is an “evidentiary rule proscribing the revelation of privileged communications at a trial when the privilege is asserted by the protected party” (People v Ward, 199 AD2d 573; People v Kemp, 59 AD2d 414). The “privilege is testimonial” (People v Kemp, supra, at 420).
The blood samples in the instant case, one of which was drawn specifically to test for alcohol, were drawn by a registered nurse, a person expréssly authorized under Vehicle and Traffic Law § 1194 (4) (a) (1) to “withdraw blood for the purpose of determining the alcoholic * * * content therein.” As to the vial specifically drawn to test for alcohol content, “withdrawal of blood for that purpose was by no means necessary for defendant’s treatment” (People v Hagin, 238 AD2d 714, *160 715), and is thus not within the principles governing a physician-patient privilege. The remaining three blood samples in the instant case constitute physical evidence, not testimony or “information” (People v Downs, 5 AD2d 935, 936). The suppression context of this case is in sharp contrast with cases such as People v Petro (122 AD2d 309, 310), where a “blood test [was] performed upon [defendant’s] blood for diagnostic purposes” and the Court found that the “physician-patient privilege mandates that the test results be suppressed.” As with the physical evidence in Kemp (supra, at 421), the blood sample “did not constitute a confidential communication * * * but was in the nature of real evidence.” As stated in People v King (232 AD2d 111, 118), “a blood sample is not unlike other tangible property.” In short, the seizure of the blood samples simply does not impinge upon or seek to pierce the physician-patient privilege. Results generated by defendant’s treating physician at the hospital for purposes of treatment and diagnosis remain under the protective aegis of the physician-patient privilege.
The defendant, in an attempt to discredit the statements of the informant as well as the detective affiant, suggests that his injuries, rather than intoxication, were the cause of his slurred speech and bloodshot eyes. The court notes that the privilege regarding the actual hospital test results of the alcohol content of defendant’s blood may be waived if the defendant affirmatively puts his medical condition in issue upon the trial of this matter (see, People v Gonzalez, 239 AD2d 931; People v Feldmann, 110 AD2d 906).
In Matter of Abe A. (56 NY2d 288, 291), the Court held that a “court order to obtain a blood sample of a suspect may issue provided the People establish (1) probable cause to believe the suspect has committed the crime, (2) a ‘clear indication’ that relevant material evidence will be found, and (3) the method used to secure it is safe and reliable. In addition, the issuing court must weigh the seriousness of the crime, the importance of the evidence to the investigation and the unavailability of less intrusive means of obtaining it, on the one hand, against concern for the suspect’s constitutional right to be free from bodily intrusion on the other.” Citing People v Marshall (69 Mich App 288, 300, 244 NW2d 451, 458), the Court also observed that “equivalent judicial authority may be exercised under a court’s power to issue a search warrant,” holding that the “blood samples which are the target of the order in the proceedings before us now come well within these provisions” (supra, at 294).
*161 In the instant case, in which the blood samples were obtained pursuant to a search warrant, (1) the defendant was witnessed to be the driver and sole occupant of the vehicle which struck the vehicle of the deceased driver and injured passenger— defendant was the only suspect, (2) the affidavit provided a clear indication that the blood was relevant material evidence which would be found at the hospital, and (3) the blood had already been drawn in a medically safe manner. Additionally, the defendant is charged with serious crimes and the evidence. is unavailable through less intrusive means.
In view of the foregoing, the defendant’s motion to controvert the search warrant is denied. No hearing is warranted.
Defendant’s motion to suppress the physical evidence, which was obtained pursuant to a valid search warrant, is denied.
The eighth branch of the defendant’s motion to suppress the blood tests, because the blood sample upon which they are based was contaminated, addresses the weight of the evidence rather than its admissibility, and is therefore denied.
The ninth branch of the defendant’s motion is granted to the extent that:
(1) the defense attorney is to furnish the District Attorney with the name and address of the chemist he proposes to employ;
(2) the evidence is to be transported to the laboratory of the independent chemist by an agent of the District Attorney, the agent to remain present at all times during the analysis and to transport the evidence back to the place from which it was obtained;
(3) the chemical analysis is to be conducted within 15 days of the entry of this order;
(4) the analysis is to be conducted at a laboratory of defense attorney’s choice within the City of New York; and
(5) the defense attorney is to furnish the District Attorney with a copy of the results of such analysis.
The tenth branch of the defendant’s motion seeking to reserve rights pursuant to CPL 255.20 is granted to the extent that any additional, supplemental or demand motions will be considered by the court when they are made in compliance with the requirements of CPL 255.20 (2) and (3).