*623 OPINION OF THE COURT
Francis D. Ricigliano, J.
Can a vial of blood taken from a defendant, in the course of treatment and diagnosis following an automobile accident, be later obtained and tested by the People and the results used in prosecuting that defendant for driving while intoxicated and other charges? For the reasons set forth below, both the blood and the blood test results are protected by the physician-patient privilege and are precluded from use at the trial in this case.
The defendant is charged with violating Vehicle and Traffic Law § 1192 (3) (driving while intoxicated), Vehicle and Traffic Law § 1212 (reckless driving), Penal Law § 120.20 (reckless endangerment in the second degree) and Penal Law § 145.00 (3) (criminal mischief in the fourth degree).
The defendant moves for various forms of relief:
1. Dismissal of the charges of: (A) reckless driving (Vehicle and Traffic Law § 1212); (B) criminal mischief in the fourth degree (Penal Law § 145.00 [3]); and (C) reckless endangerment in the second degree (Penal Law § 120.20) on the grounds that said charges are insufficient and defective, pursuant to CPL 170.30, 170.35, 100.15 and 100.40.
2. An order, pursuant to CPL 710.20, suppressing evidence of any chemical test of the defendant’s blood upon the grounds that the search warrant was based upon less than probable cause.
3. Preclusion of the evidence of any chemical test of the defendant’s blood upon the grounds that: (A) the search warrant abrogated the defendant’s rights pursuant to Vehicle and Traffic Law § 1194 (3); (B) the defendant’s blood was taken in violation of the physician-patient privilege; (C) the blood test results are unreliable as a matter of law; and (D) the People cannot establish a chain of custody for the blood test results.
4. Preclusion of the data results of the powertrain control module obtained from the defendant’s automobile on the basis that said results are scientifically unreliable or, in the alternative, the defendant seeks a Frye hearing.
5. Suppression, pursuant to CPL 710.20 (3), of the defendant’s alleged statements or, in the alternative, a Huntley hearing.
6. A Sandoval hearing.
7. An order, pursuant to CPL 200.95, for a court-ordered bill of particulars and pursuant to CPL 240.40 for court-ordered discovery.
*624 The People oppose the defendant’s motion. With permission of the court, the Nassau County Criminal Courts Bar Association filed an amicus curiae brief in support of the defendant’s position on the issue of physician-patient privilege.
I. Factual Background
On July 11, 2006, at approximately 9:45 p.m., the defendant, a member of the Nassau County Police Department, was traveling eastbound on Jericho Turnpike, in an automobile owned by the Nassau County Police Department. The defendant had a one-car accident. At least two persons witnessed the events leading up to the accident, Cassandra Cattani and Zack Beau-man.
As a result of the accident, the defendant suffered injuries. Ambulance medical technician (AMT) Robert J. Spear arrived at the scene. He observed that the defendant was “disoriented.” AMT Spear placed a cervical collar on the defendant’s neck and placed him on a stretcher. AMT Dennis Hendrickson then arrived, and an oxygen mask was placed on the defendant. AMTs Hendrickson and Spear treated the defendant for a serious head injury. As part of the treatment, while en route to Nassau University Medical Center (NUMC), AMT Spear collected six vials of the defendant’s blood. Based upon NUMC’s standard practice, once the defendant arrived in the emergency room the emergency room nurses did not draw additional blood, but instead used the AMT drawn blood since the quantities were sufficient and were presented inside proper containers. That night, at the hospital, the vials’ contents were tested for a “comprehensive metabolic profile,” which did not include testing for alcohol. Five of the six vials were then discarded.
On July 13, 2006, Maria Jinky Jung, a NUMC medical technologist, removed the one remaining vial from the storage refrigerator, unsealed the vial, and tested its contents in order to determine the ethanol content of the blood in the vial. Ms. Jung performed this test not for purposes of medical treatment, but “to see if ethanol was present.”
On July 20, 2006, the Nassau County Police Department sought a search warrant for the one remaining vial of the defendant’s blood stored at the hospital. The affidavit in support of the search warrant was signed by Richard H. Harasym, a member of the Nassau County Police Department and a detective with the internal affairs unit. The detective’s assertions were based upon information and belief, the sources being (1) *625 the AMT who drew the defendant’s blood, (2) another civilian witness (Amanda Emigholz) of the defendant’s accident, and (3) a civilian witness who was employed at the restaurant which the defendant attended before the accident.
That same day, July 20, 2006, the Honorable Frank A. Gulotta, Jr., signed a search warrant for “a vial or vials of first drawn blood” taken from Vincent Muscarnera by an AMT on July 11, 2006. The warrant directed that the blood be taken to the Suffolk County Forensic Laboratory for “alcohol and/or drug testing.” On July 21, 2006, Officer Harasym served the search warrant and seized the one remaining vial of the defendant’s blood.
The blood was tested at the Division of Medical-Legal Investigations and Forensic Sciences, County of Suffolk, New York. A toxicology report dated July 21, 2006 indicates that the blood alcohol content in the defendant’s blood as seized was .21%.
II. Legal Analysis and Conclusions
1. Sufficiency of Accusatory Instruments
The defendant seeks an order dismissing three of the four charges (Vehicle and Traffic Law § 1212; Penal Law §§ 120.20, 145.00 [3]). The charges for which the defendant seeks dismissal were all filed by way of District Court information.
An information is sufficient on its face when it (1) substantially conforms to the requirements of CPL 100.15; (2) sets forth allegations which “provide reasonable cause to believe that the defendant committed the offense charged”; and (3) contains nonhearsay allegations which “establish, if true, every element of the offense charged and the defendant’s commission thereof.” (CPL 100.40 [1] [b], [c]; People v Alejandro, 70 NY2d 133 [1987].) As stated by the Court of Appeals in Alejandro, this third requirement is also known as the prima facie case requirement.
On a motion to dismiss an information, the court must confine its analysis to the allegations contained in the information and in any depositions filed in support of it. (People v Pelt, 157 Misc 2d 90 [Crim Ct, Kings County 1993]; People v Alejandro, 70 NY2d 133 [1987], supra.)
A. Reckless Driving
Vehicle and Traffic Law § 1212 (reckless driving) reads, in relevant part, that:
*626 “Reckless driving shall mean driving or using any motor vehicle, motorcycle or any other vehicle propelled by any power other than muscular power or any appliance or accessory thereof in a manner which unreasonably interferes with the free and proper use of the public highway, or unreasonably endangers users of the public highway.”
The information and the supporting depositions of Cassandra Cattani and Zack Beauman allege that the defendant was: traveling “with no lights on” at 9:45 p.m.; “speeding by”; “traveling at a high rate of speed”; “went flying by”; and that he “lost control” of his vehicle. These allegations establish reasonable cause to believe the defendant was driving a motor vehicle in a manner which unreasonably interfered with the free and proper use of the public highway and unreasonably endangered users of the public highway. Accordingly, the court concludes that the District Court information charging the defendant with reckless driving is sufficient, as it satisfies the requirements of CPL 100.40. Defendant’s motion to dismiss this charge is denied.
B. Criminal Mischief in the Fourth Degree Penal Law § 145.00 (3) (criminal mischief in the fourth degree) reads, in relevant part, that:
“A person is guilty of criminal mischief in the fourth degree when, having no right to do so nor any reasonable ground to believe that he has such right, he: . . .
“3. Recklessly damages property of another person in an amount exceeding two hundred fifty dollars.”
Penal Law § 15.05 (3) defines “Recklessly” as follows:
“A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto.”
The factual allegations contained in the information and supporting depositions of Cassandra Cattani and Zack Beauman, as *627 set forth previously, establish reasonable cause to believe the defendant acted recklessly. The information sworn to by Detective Richard H. Harasym establishes that the defendant damaged property of another (the unmarked police department car) in the amount of $250. Accordingly, the court concludes that the District Court information charging the defendant with criminal mischief in the fourth degree is sufficient, as it satisfies the requirements of CPL 100.40. Defendant’s motion to dismiss this charge is denied.
C. Reckless Endangerment in the Second Degree
Penal Law § 120.20 (reckless endangerment in the second degree) reads, in relevant part, as follows: “A person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person.”
The factual allegations contained in the information and supporting depositions of Cassandra Cattani and Zack Beauman establish reasonable cause to believe that the defendant acted recklessly, which created a substantial risk of serious injury to another person. Accordingly, the court concludes that the District Court information charging the defendant with reckless endangerment in the second degree is sufficient, as it satisfies the requirements of CPL 100.40. Defendant’s motion to dismiss this charge is denied.
2. Suppression/Preclusion of the Defendant’s Blood Test
Results
The defendant seeks suppression and/or preclusion of the blood test results set forth on the July 21, 2006 toxicology report on numerous grounds.[1]
A. Violation of Vehicle and Traffic Law § 1194 (3)
The defendant seeks “preclusion” of the blood test results of any chemical tests of the blood upon the grounds that the blood was not taken pursuant to Vehicle and Traffic Law § 1194 (3).[2]
Vehicle and Traffic Law § 1194 (3) allows a police officer or district attorney to request and obtain a court order to compel a *628 person to submit to chemical tests of breath, blood, urine, and saliva if, among other reasons, the defendant was arrested for driving while impaired and refused to submit to a chemical test. It is uncontroverted that the People did not comply with Vehicle and Traffic Law § 1194 (3). Rather, the People, nine days after the event, obtained a search warrant to seize the defendant’s blood sample which was stored at the hospital. Contrary to the defendant’s argument, however, the Court of Appeals has clearly acknowledged that Vehicle and Traffic Law § 1194 (3) is only one means of requiring a person to submit to a chemical test. (People v Casadei, 66 NY2d 846 [1985].) If Penal Law or Vehicle and Traffic Law violations are involved, a search warrant may be issued authorizing the taking of a blood sample. (Matter of Abe A., 56 NY2d 288 [1982]; People v Casadei, 66 NY2d 846 [1985], supra.) A blood sample may be obtained pursuant to a validly issued search warrant without resorting to Vehicle and Traffic Law § 1194. (People v McGrath, 135 AD2d 60 [2d Dept 1988].)
Accordingly, the portion of the defendant’s motion seeking suppression of the results of the chemical test on the grounds that the blood samples were not taken pursuant to Vehicle and Traffic Law § 1194 (3) is denied.
B. The Search Warrant and Probable Cause
The defendant seeks to suppress the results of the blood test upon the grounds that the search warrant authorizing seizure of the defendant’s blood was issued upon less than probable cause. The defendant is actually seeking to controvert the search warrant in this case. The defendant refutes the allegations set forth in the ex parte affidavit in support of the warrant, claiming that the affidavit does not provide reasonable cause to believe any other violation of law occurred, other than speeding. Moreover, the defendant claims that a hearing should be held to resolve the factual discrepancy surrounding what the AMT allegedly said to the detective who signed the affidavit and what the AMT allegedly said to the investigator hired by the defendant. (The affidavit in support of the search warrant stated that the AMT noticed that the defendant mildly smelled of alcohol. The affidavit of the investigator stated that the AMT smelled a *629 mild odor of alcohol, but he did not know whether it was coming from the defendant, the defendant’s clothing or from an area around the clothing.)
There is a presumption of validity with respect to an affidavit supporting a search warrant. (Franks v Delaware, 438 US 154 [1978].) “Probable cause does not require proof sufficient to warrant a conviction beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense has been or is being committed or that evidence of a crime may be found in a certain place.” (People v Bigelow, 66 NY2d 417, 423 [1985].) Moreover, the defendant has failed to make a preliminary showing that a false statement, if made in the affidavit, was made knowingly and intentionally or with reckless disregard for the truth. (People v Kroll, 162 AD2d 717 [2d Dept 1990].)
Accordingly, the portion of the defendant’s motion seeking suppression of the results of the chemical test of the defendant’s blood based on a lack of probable cause for the search warrant is denied. The court finds that the ex parte application and affidavit in support of the search warrant established probable cause to believe the defendant committed all of the alleged crimes.
C. Physician-Patient Privilege (CPLR 4504)
CPLR 4504 codified the physician-patient privilege in New York. It provides, in relevant part, that:
“Unless the patient waives the privilege, a person authorized to practice medicine, registered professional nursing, licensed practical nursing, dentistry, podiatry or chiropractic shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity” (CPLR 4504 [a].)
The physician-patient privilege (CPLR 4504) is applicable in criminal proceedings. (People v Petro, 122 AD2d 309 [3d Dept 1986].) The physician-patient privilege may be asserted by a patient even though the patient is charged with a crime. (Matter of Grand Jury Investigation of Onondaga County, 59 NY2d 130 [1983].)
The defendant seeks preclusion of the blood test results based upon the grounds of the physician-patient privilege. The defendant contends that because the blood was taken for the purposes of diagnosis and treatment, the results are protected by the *630 privilege. In opposition, the People contend that the blood test results are admissible because: (1) an “AMT” is not within the class of health care professionals who are subject to the physician-patient privilege of CPLR 4504, and (2) the results of the blood test were obtained pursuant to a search warrant. As such, these results do not constitute “information” acquired in attending a patient in a professional capacity, as required by CPLR 4504.[3]
i. The Physician-Patient Privilege (Codified in CPLR 4504) Extends to the AMT
The People maintain that because an AMT is not specifically designated in CPLR 4504 as one of health care professionals who are subject to the physician-patient privilege, the privilege does not apply. This argument is misplaced. The entity subject to the privilege here is not the AMT, but the hospital (NUMC). The hospital possessed the information sought by the People in their warrant application, not the AMT. The hospital tested the blood, not the AMT. The hospital was served with the warrant, not the AMT.
Indeed, the AMT has no potentially privileged communication to divulge in this case, no information to impart. His involvement in obtaining the blood was limited to that set forth in his affidavit in support of the People’s application for a search warrant:
“I drew six (6) vials of blood from Muscarnera with different colored caps (red, pink, two yellow, light purple and blue), which were vacuum packed and self-sealing in nature. The vials were then placed in a plastic bag and placed between his legs on his stretcher. I did not mark or identify them in any way, as I understood that this is done by the hospital when they are received there. At the hospital, I wheeled Muscarnera into the emergency room and transferred him from my ambulance stretcher into a hospital bed. The bag containing the vials was *631 kept between his legs on the hospital bed. I advised one of the doctors or nurses that Muscarnera’s blood had been drawn and that the bag of vials had been left on his bed. I then left the area.” (See, affidavit of Robert J. Spear, defendant’s notice of motion, exhibit C.)
Thus, the AMT drew the blood, placed it in separate vials with separate caps, sealed it, and transported it directly to the hospital. Utilizing standard hospital practice, NUMC nurses found these samples acceptable and used them for testing. As such, it is clear that the AMT was acting solely to assist in the hospital’s attending to the defendant in a professional capacity.[4] ii. Any Blood Test Results from Blood Taken from the Defendant Fall within the Physician-Patient Privilege
In this case, the AMT drew six vials of blood from a disoriented defendant with an oxygen mask covering his mouth in the course of treating that defendant for head injuries. Nine days later, the People sought and obtained a warrant for the one remaining vial of blood. The People, citing People v Bolson (183 Misc 2d 155 [Sup Ct, Queens County 1999]), assert that the vial in question is not subject to suppression because it is not “information” acquired in attending the patient in a professional capacity, as required by CPLR 4504. This court disagrees and instead finds the reasoning in People v Bashkatov (13 Misc 3d 1101 [Crim Ct, Richmond County 2006]) more persuasive. Bashkatov, like this case, involved a defendant hospitalized after an auto accident. As here, blood was drawn as part of attending the patient in a professional capacity. As here, the People obtained a search warrant to obtain the vials of blood, seized the blood, and sought to introduce a subsequent test on that blood. In suppressing those test results, the court relied on the appellate authority of People v Petro (122 AD2d 309 [1986], supra), which found that test results of blood drawn for diagnostic purposes are subject to the physician-patient privilege.
In Petro, the defendant was involved in a two-car accident. The driver of the second vehicle died. Since there were no other *632 witnesses to the accident, the chief evidence against the defendant was the finding of a blood test performed upon defendant’s blood after he was taken, in a semiconscious state, from the scene of the accident to the hospital. This blood test showed a blood alcohol level of .15%. In upholding the lower court’s suppression of these results, the Petro court found that the physician-patient privilege applied. The Court held:
“[I]t is clear that the blood test was performed in the course of attending defendant in a professional capacity. Because there is no evidence that defendant at any time waived the privilege and since there is no specific statutory exception covering this case . . . the physician-patient privilege mandates that the test results be suppressed.” (Petro, supra at 310 [citations omitted].)
Thus, Petro held that results of blood tests performed on blood drawn from a semiconscious criminal defendant, brought to a hospital as the result of an accident, are privileged where the blood test was performed in attending the defendant in a professional capacity. Bashkatov, applying the same reasoning, found that the blood itself is also privileged. (See, Bashkatov, supra at 1104.)
The Bolson case, relied upon by the People, reached a different conclusion. Bolson also involved an accident where the defendant collided with another vehicle. The driver of the second vehicle died and the passenger was injured. The defendant was taken to the hospital emergency room where three blood samples were drawn. A registered nurse at the hospital, smelling alcohol on the defendant’s breath, independently drew an additional vial of blood “for the specific purpose of testing for alcohol in his blood.” (Bolson, supra at 157.)
Two days later, the police obtained a search warrant to procure and test the samples of the defendant’s blood at the hospital. The defendant moved to suppress the blood test results. The Bolson court denied the motion, stating that the physician-patient privilege did not apply to the vial drawn by the nurse because it was drawn not for treatment, but to specifically test for alcohol. (Bolson, supra at 159.) The court also denied the motion as to the remaining blood samples, because the court held they constituted evidence, “not testimony or information” as required under CPLR 4504. (Bolson, supra at 160 [internal quotation marks omitted].)
This court respectfully disagrees with the Bolson court’s analysis of this complicated issue. First, the court in Bolson focused *633 its inquiry on the nurse’s reasoning for testing the blood, finding that where the test is not for medical and diagnostic purposes, the result is not privileged. Instead, the inquiry should be on why the blood was drawn in the first place, and whether the defendant consented or, because of incapacity, is deemed to have consented to medical treatment because he was unable to refuse the treatment. (See, Meyer v Supreme Lodge, Knights of Pythias, 178 NY 63 [1904] [physician-patient relationship established when unconscious person is treated by a physician].) The reason for this is clear — the patient, and no one else, is the holder of the privilege. (Steinberg v New York Life Ins. Co., 263 NY 45 [1933].) Once established, it is the patient — and only the patient — who can waive that privilege. Thus, a patient who consents to surrender his blood for purposes of medical treatment is thus entitled to the protection of CPLR 4504 with respect to the testing of that blood. This privilege cannot be waived by a medical practitioner who later decides to undertake testing of the blood for nonmedical reasons.
Second, to distinguish blood test results from the blood itself by calling one “information” and the other “physical evidence” is to make a distinction without a difference. One of the goals of the physician-patient privilege is the maximization of uninhibited communication to promote adequate diagnosis and treatment. (Matter of Grand Jury Investigation in N.Y. County, 98 NY2d 525 [2002].) To be sure, a vial of blood can be treated as physical evidence. But, if the physician-patient privilege is designed to promote communication between the patient and physician, it is the consent to furnish one’s blood, with all the information it may contain, which must be protected.
“To hold that the results generated by the defendant’s treating physician at the hospital for the purpose of treatment and diagnosis remain under the protective aegis of the physician-patient privilege [as in Petro, supra], but not the blood itself, as suggested by the prosecution and Bolson, would render CPLR 4504 meaningless.” (Bashkatov, supra at 1104.)
If the test results of blood taken for diagnostic purposes are protected, the blood itself must be protected as well. To hold otherwise would defeat the purpose behind the physician-patient privilege. Patients in need of treatment would be forced to inquire of physicians the reasons for their taking the patient’s blood. Unconscious or incapacitated patients would lose all *634 protections, and be at the mercy of medical practitioners who seek not to treat them but to obtain information of criminality. Such a result would only serve to discourage the candor and uninhibited communication contemplated by CPLR 4504.
Results of a blood sample obtained by the prosecution pursuant to a search warrant cannot be used against the defendant at trial, where the blood was taken by an AMT acting in a professional capacity to treat and diagnose the patient. Defendant’s motion to preclude the introduction of the blood test results at the trial in this case is therefore granted, iii. Unreliability of Blood Test Results and Chain of Custody
The defendant seeks preclusion of the blood test results upon the grounds that the results are unreliable as a matter of law and that the People cannot establish a chain of custody. Inasmuch as the court has already precluded the use of the blood test results, the court will not address these issues.
3. Preclusion of Data from the Powertrain Control Module
The defendant seeks the “preclusion” of the results of the data from the powertrain control module (black box) obtained from the defendant’s automobile after the accident, based upon the grounds that the results are scientifically unreliable. In the alternative, the defendant requests that the court conduct a Frye hearing prior to the trial to ascertain the reliability of the results.[5]
The admissibility test for expert testimony was established in Frye v United States (293 F 1013 [1923]). It requires that expert testimony be based on scientific principle or procedure which has been sufficiently established to have gained general acceptance in the particular field in which it belongs. (People v Wesley, 83 NY2d 417 [1994].) The New York Court of Appeals has unanimously affirmed the continuing validity of the Frye test, rather than the federal Daubert test standard. (See, Daubert v Merrell Dow Pharmaceuticals, Inc., 509 US 579 [1993].) The Frye test standard only applies to novel scientific theories or tests. (People v Wernick, 89 NY2d 111 [1996].) Whether the Frye standard has been satisfied with respect to a particular type of scientific evidence is for the trial judge to decide. A court may be able to make its determination by reference to scientific *635 literature or judicial opinions. (People v Hopkins, 6 Misc 3d 1008[A], 2004 NY Slip Op 51748[U] [Monroe County Ct 2004].) If there is insufficient scientific literature or judicial opinions, a court may conduct a hearing on the issue of general acceptance in the relevant scientific community. (People v Jeter, 80 NY2d 818 [1992].)
In New York, trial level courts have held that data recorded on a “Sensing Diagnostic Module” (SDM) or a “black box” seized from a defendant’s automobile is rehable, without holding a Frye hearing. (See, People v Hopkins, 6 Misc 3d 1008[A], 2004 NY Slip Op 51748[U], supra; People v Christmann, 3 Misc 3d 309 [Just Ct, Wayne County 2004].) In Nassau County, Judge Honorof, after conducting a Frye hearing, found the data recorded on a SDM to be scientifically rehable. (See, People v Slade, Index No. 0666-03.) Notwithstanding the foregoing, however, no appellate court in New York State has ruled on the admissibility of data recorded on a SDM. Nor have the People presented this court with any literature concerning the scientific principles of a SDM or the reliability of data recorded on a SDM. Thus, this court finds that there is a lack of binding judicial precedent on this issue and this court cannot admit into evidence the data recorded on the “black box” without first holding a hearing on its reliability. Moreover, in the instant case the data was recorded on a “powertrain control module” (black box), not a SDM (black box). The court is not certain whether a “powertrain control module” and a SDM are one and the same.
In view of the foregoing, the portion of the defendant’s motion seeking an in limine pretrial evidentiary ruling prohibiting the use of data from the “black box” found in the defendant’s automobile is granted to the extent that a Frye hearing shall be held prior to trial.
4. Suppression of Statements
The defendant moves for an order, pursuant to CPL 710.60 (4), suppressing from the use at trial any statements allegedly made by the defendant to a public servant upon the ground that the statements were involuntarily made within the meaning of CPL 60.45 or, in the alternative, the defendant requests a Huntley hearing. The People consent to a Huntley hearing. The defendant’s motion is granted to the extent that a Huntley hearing is hereby granted. Said hearing shall be held prior to trial.
*636 5. Bad Acts/Criminal Convictions — Sandoval Hearing
The defendant’s motion for a Sandoval hearing to determine previous alleged bad acts, arrests, or convictions to be used by the People to impeach the defendant’s credibility if the defendant chooses to testify at trial is granted (see, People v Sandoval, 34 NY2d 371 [1974]). Said hearing shall be held before trial.
6. Bill of Particulars/Court-Ordered Discovery
The defendant’s demand for court-ordered discovery is denied. The People have supplied the defendant with the requested discovery. The portion of the defendant’s motion for a court-ordered bill of particulars is denied as moot as to those items which the People have already supplied and denied as to the remaining items.
The People are reminded of their continuing obligation under Brady v Maryland (373 US 83 [1963]).
The defendant’s application for Rosario material is granted to the extent that the People shall provide all such material in their possession as provided by CPL 240.44 and 240.45.
The remainder of the defendant’s motion is denied.

. Defendant’s notice of motion seeks to preclude the results of “the blood test.” The arguments in support of the motion clearly address only the July 21, 2006 tests taken by Suffolk County Forensic Sciences on the vial seized after the warrant. As such, this decision does not address the results of medical technologist Jung’s test.

. Preclusion is the wrong remedy here. CPL 710.20 permits a court to suppress, not preclude, evidence upon motion of a defendant who is “aggrieved” by the improper acquisition of that evidence. Specifically, CPL 710.20 *628 (5) authorizes a defendant to move for an order suppressing evidence of a chemical test of his blood if the test was administered in violation of, inter alia, Vehicle and Traffic Law § 1194 (3). The court shall entertain the defendant’s requested relief as a request for suppression, pursuant to CPL 710.20 (5).

. Preclusion is again the wrong remedy here. The CPL does not provide for “preclusion” of evidence based upon a violation of the physician-patient privilege. The defendant is actually seeking an in limine pretrial evidentiary ruling prohibiting the use of the defendant’s blood test results based upon a violation of the physician-patient privilege. An in limine motion is a motion seeking a pretrial evidentiary ruling on the admissibility of evidence that is likely to arise at a trial (see, Rothblatt and Leroy, Motion In Limine Practice, 20 Am Jur Trials 441). This court shall entertain the defendant’s in limine evidentiary motion.

. In any event, other courts have held that the class of persons listed in CPLR 4504 extends to emergency medical technicians in circumstances like this. (See, People v Hanf, 159 Misc 2d 748 [Monroe County Ct 1994] [an EMT who responded to the scene of a homicide was covered by the privilege because the EMT had followed the prescribed protocol and had actually acted at the direction and supervision of the physician]; People v Mirque, 195 Misc 2d 375 [Crim Ct, Bronx County 2003] [court held that a patient en route to a hospital by ambulance should not be required to master the rules of agency before speaking freely to an EMT].)

. The defendant is again actually seeking an in limine pretrial evidentiary ruling prohibiting the admissibility of the data from the “black box” based upon the grounds of scientific unreliability. The court will entertain the defendant’s in limine application.